# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| DAKITA P., | | |
| Plaintiff, | | |
| v. | | No. 24 CV 11717 |
| FRANK BISIGNANO, COMMISSIONER OF SOCIAL SECURITY, | | Magistrate Judge McShain |
| Defendant. | | |

### MEMORANDUM OPINION AND ORDER

Plaintiff Dakita P. appeals the Commissioner of Social Security's denial of her applications for benefits. For the following reasons, plaintiff's motion for summary remand [22] is granted, defendant's motion for summary judgment [25] is denied, and the case is remanded for further administrative proceedings.[1]

## Background

In October 2020, plaintiff applied for a period of disability and disability insurance benefits and supplemental security income, alleging an onset date of September 29, 2020. [16-1] 190. The claims were denied initially, on reconsideration, and by an administrative law judge (ALJ) after a hearing. [*Id.*] 190-201. The Appeals Council denied review in September 2024, *see* [*id.*] 1-6, making the ALJ's decision the agency's final decision. *See* 20 C.F.R. §§ 404.955 & 404.981. Plaintiff then appealed to this Court, and the Court has subject-matter jurisdiction pursuant to 42 U.S.C. § 405(g).[2]

The ALJ reviewed plaintiff's claim in accordance with the Social Security Administration's five-step evaluation process. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. [16-1] 193. At step two, the ALJ determined that plaintiff had the following severe impairments: lymphoid papulosis, left ring finger chronic paronychia, irritable bowel

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except for citations to the administrative record [16], which refer to the page numbers in the bottom right corner of each page.

[2] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge [9].

syndrome, and depression. [*Id.*]. At step three, the ALJ concluded that plaintiff's impairments did not meet or equal the severity of a listed impairment. [*Id.*] 193-95. Before turning to step four, the ALJ ruled that plaintiff had the residual functional capacity (RFC) to perform light work, except that plaintiff (1) could frequently handle and finger bilaterally; (2) must avoid concentrated exposure to temperature extremes, wetness, humidity, and pulmonary irritants; (3) can perform simple and multi-step tasks; (4) should avoid collaborative projects; (5) could only occasionally interact with the public; and (6) must have standard office proximity to a restroom. [*Id.*] 195-99. At step four, the ALJ ruled that plaintiff could not perform her past relevant work. [*Id.*] 199. At step five, the ALJ held that jobs existed in significant numbers in the national economy that plaintiff could perform: marker (131,000 jobs), small parts assembler (19,700 jobs), and mail clerk (12,200 jobs). [*Id.*] 199-200. The ALJ thus concluded that plaintiff was not disabled.

## Legal Standard

The Court reviews the ALJ's decision to determine if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)). "When reviewing a disability decision for substantial evidence, we will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (internal quotation marks and brackets omitted).

## Discussion

Plaintiff argues that the denial of benefits should be reversed and the case remanded because the RFC determination does not account for the limitations caused by her chronic migraines. [22] 6-7. The Court agrees.

The ALJ determined that plaintiff's migraines were non-severe because "the claimant was prescribed medications, which helped, and a neurologist suspected that migraines were likely due to external stressors, namely homelessness and being estranged from family." [16-1] 193. The ALJ stated that she "considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's [RFC]," [*id.*], but her decision does not reflect whether the ALJ concluded that the migraines caused no work-related limitations or that the RFC, as crafted, sufficed to account for any migraine-related limitations. Indeed, the ALJ did not discuss plaintiff's migraines again (other than to note in passing that any headache disorder did not meet or equal a listed impairment, *see* [*id.*] 194). Even assuming that substantial evidence supports the ALJ's ruling that plaintiff's migraines were not a severe impairment, a remand is required because the Court

cannot determine how or whether the ALJ accounted for any work-related limitations caused by plaintiff's migraines.

"The ALJ's RFC assessment must incorporate all the claimant's limitations supported by the medical record. The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Jennifer M. v. Bisignano*, No. 23 CV 2219, 2025 WL 2463059, at *2 (N.D. Ill. Aug. 26, 2025) (internal citations and quotation marks omitted). The ALJ must "evaluate the intensity and persistence of a claimant's symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." SSR 16-3, 2017 WL 5180304, at *4 (Oct. 25, 2017). "When determining an individual's RFC, the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe[.]" *Brandon W. v. Bisignano*, No. 23 C 4373, 2025 WL 3215775, at *6 (N.D. Ill. Nov. 18, 2025) (internal quotation marks omitted). "Since the RFC finding must account for all of a claimant's physical and mental limitations, an ALJ's failure to fully consider even non-severe limitations within the RFC finding warrants remand and reversal. This is because an RFC finding which does not account for all of a claimant's limitations is not supported by substantial evidence." *Fazekas v. Bisignano*, No. 3:24-CV-79, 2025 WL 3223782, at *3 (N.D. Ind. Nov. 18, 2025) (internal citations and quotation marks omitted).

Plaintiff introduced significant evidence related to her migraines, but the ALJ did not build a logical bridge from that evidence to either of the possible conclusions that may be embedded within her decision, *i.e.*, the migraines caused no work-related limitations or the RFC determination accounted for any migraine-related limitations. *See Sahar R. v. O'Malley*, No. 20 C 504, 2024 WL 117806, at *3 (N.D. Ill. Mar. 19, 2024) ("[T]he ALJ as an obligation to build an accurate and logical bridge between the evidence and the result to allow the court to trace the path of the ALJ's reasoning from evidence to conclusion.").

Plaintiff experienced migraines–and related symptoms of photophobia, phonophobia, nausea, and vomiting–since her teens, but they became more frequent and longer lasting in 2021. [16-2] 1965. She took two different prescription medications for migraines but continued to experience headaches every other day. [*Id.*] 1627, 1634. Plaintiff began seeing a neurologist, Dr. Zacharias, in July 2021, when she was experiencing three to four headaches a week that lasted up to six hours. [*Id.*] 1315. The neurologist put plaintiff on a new medication and treated her with injections of a CGRP antagonist, which, as of mid-2022, reduced the frequency (only twice per month) and duration (only 30 minutes) of the headaches. [16-4] 4874. In October 2022, however, plaintiff experienced weekly headaches while dealing with a break-in at her apartment, difficulty sleeping, and interruptions in her course of treatment. [*Id.*]. Dr. Zacharias recognized that plaintiff had a history of migraines

3

and opined that it was "likely that the acute stressor is causing increase[d] frequency of migraines." [16-4] 4878-79. At a January 2023 exam with Dr. Zacharias, plaintiff reported experiencing a headache during the exam, "a series of headaches" near her birthday, and two migraines per month. [*Id.*] 4591, 4596.

The ALJ's findings that medication helped plaintiff's migraines, and that the migraines were caused by external stressors, do not permit the Court to trace the path of the ALJ's reasoning with respect to how, if at all, plaintiff's migraines affected her ability to work. To begin, the ALJ misstated the evidence by stating that Dr. Zacharias "suspected that migraines were likely *due to* external stressors." [16-1] 193 (emphasis added). Rather, Dr. Zacharias recognized that plaintiff had a long history of migraines and opined that the *frequency* of plaintiff's migraines had been exacerbated by a series of acute external stressors. *See* [16-4] 4878-79. If anything, that opinion should have led a reasonable decisionmaker to consider whether the stresses associated with full-time employment were also likely to exacerbate the frequency of plaintiff's migraines, but there is no indication that the ALJ considered that question. *Cf. Brady v. Berryhill*, Cause No. 2-16-CG-523-PRC, 2018 WL 1167216, at *7 (N.D. Ind. Mar. 6, 2018) (remanding where ALJ failed to consider, *inter alia*, evidence that claimant experienced migraines in response to stressful activities). Moreover, that plaintiff improved after receiving injections for her migraines does not establish that the migraines caused no work-related limitations or that the RFC determination adequately accounted for migraine-related limitations. "Improvement is a relative concept and, by itself, does not convey whether or not a patient has recovered sufficiently to no longer be deemed unable to perform particular work on a sustained basis." *Brett D. v. Saul*, Case No. 19 C 8352, 2021 WL 2660753, at *4 (N.D. Ill. June 29, 2021) (internal quotation marks omitted).

If the deficiencies in the ALJ's decision were not plain enough, the Commissioner's attempts to salvage the decision only underscore them. The Commissioner faults plaintiff for supposedly failing to alert the ALJ to "any problems with light sensitivity or sound sensitivity, nausea, or vomiting." [25] 5. But plaintiff submitted a prehearing brief that cited the very treatment notes in which these complaints were recorded. *See* [16-2] 652 (citing [16-4] 4592 (treatment note reflecting that migraines were associated with "nausea, vomiting, photo/phono phobia")). The Commissioner argues that the ALJ could "properly discount" plaintiff's "reported frequency of migraines and headaches where the record reveals far fewer reports of migraines and headaches to doctors" and "where headaches improve with treatment and medication." [25] 3-4. On the former point, however, the ALJ never identified any discrepancy between plaintiff's allegations regarding her migraines and the medical record. On the latter, an ALJ certainly may consider whether improvement in response to treatment undermines a claimant's case to be disabled, but the Commissioner's argument begs the question of whether the ALJ undertook that analysis in this case. As noted above, there is simply no indication in the ALJ's decision that the ALJ concluded that, because of the reported improvement, plaintiff's

4

migraines caused no work-related limitations. The Commissioner also contends that the ALJ's decision is consistent with the opinion of state agency reviewer Calixto Aquino, who purportedly found that no headache-related restrictions were needed. [25] 5-6. But Dr. Aquino's opinion does not address whether plaintiff's migraines were a severe impairment or the extent of any resulting limitations, *see* [16-1] 474-82, so the Court cannot infer from Aquino's silence that the migraines caused no work-related limitations. *See Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014) (rejecting argument that state agency doctors' analyses of claimant's migraines "reliev[ed] the ALJ of any further obligation to account for the migraines" where one doctor "did not actually specify how Moon's migraines related to the [RFC] she found" and another doctor explained that "[t]here is not enough information . . . to determine how much these [migraines] contribute to her overall impairment").

Finally, the Commissioner contends that any error was harmless because the vocational expert testified that, even if plaintiff had been limited to performing simple, routine work with no hourly production quotas, there would have been a significant number of jobs in the national economy that plaintiff could perform. [25] 6-7; *see* [16-1] 200, 251-52. According to the Commissioner, those restrictions "equate to low stress work," but the Commissioner cites no authority to support that claim. More fundamentally, however, the ALJ's perfunctory handling of plaintiff's migraines at step two raises a serious question whether the ALJ ever considered if plaintiff's migraines caused work-related restrictions. *Compare Leslie T. v. Saul*, Case No. 4:19-cv-113-SEB-DML, 2020 WL 6586658, at *3 (S.D. Ind. Oct. 19, 2020) ("But an ALJ's failure to address impairments at step two can be a harbinger of errors beyond step two because the ALJ may then fail to address whether the impairments she found were not severe or impairments she may have not addressed at all cause limitations in work capacity for purposes of formulating an RFC and then deciding whether the claimant can work."). The Court accordingly has no confidence that the two additional restrictions identified by the ALJ (simple, routine work and no hourly quotas) were sufficient to account for plaintiff's migraines, nor can the Court be sure that plaintiff did not require different restrictions that could have precluded her from performing the jobs the ALJ identified at step five. *See Wilder v. Kijakazi*, 22 F.4th 644, 654 (7th Cir. 2022) (ALJ's error is harmless only when "the court can predict with great confidence what the result of remand will be") (internal quotation marks omitted).

## Conclusion

Plaintiff's motion for summary remand [22] is granted and defendant's motion for summary judgment [25] is denied. The decision of the Social Security Administration is reversed, and, in accordance with the fourth sentence of 42 U.S.C. § 405(g), this case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

_____
**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: March 12, 2026**

6